**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| STATE OF LOUISIANA, by and through its ATTORNEY GENERAL LIZ MURRILL,<br><br>PLAINTIFF,<br><br>v.<br><br>KALSHI INC., et al.,<br><br>DEFENDANTS. | Civil Action No. 2:26-cv-2614<br><br>Judge: NJB-EJD<br><br>Removed from the Twenty-First Judicial District Court for the Parish of Tangipahoa |

# MEMORANDUM OF LAW IN SUPPORT OF LOUISIANA'S EMERGENCY MOTION TO REMAND

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 4

LEGAL STANDARDS ........ 6

ARGUMENT ........ 7

I. THIS REMOVAL ACTION IS IMPROPER BECAUSE POLYMARKET IS COLLATERALLY ESTOPPED ........ 7

II. IN ANY EVENT, THIS COURT LACKS JURISDICTION. ........ 8

A. There Is No Federal-Officer Removal Jurisdiction (§ 1442(a)(1)). ........ 9

B. There Is No Federal-Question Jurisdiction (§ 1331). ........ 12

III. THE COURT SHOULD AWARD LOUISIANA JUST FEES AND COSTS. ........ 14

CONCLUSION ........ 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Am. Airlines v. Sabre, Inc.*,
694 F.3d 539 (5th Cir. 2012) ....................15

*BP P.L.C. v. Mayor & City Council of Balt.*,
593 U.S. 230 (2021) ....................8

*Commonwealth of Kentucky v. QCX LLC*,
No. 26-cv-47 (E.D. Ky. Oct. 14, 2026) ....................2, 12, 13

*Gunn v. Minton*,
568 U.S. 251 (2013) ....................12

*KalshiEX, LLC v. Assad*,
190 F.4th 1098 (9th Cir. 2026) ....................1, 5, 6

*Loeb v. Vergara*,
326 F. Supp. 3d 295 (E.D. La. 2018) ....................4

*Ludlow Exchange, LLC v. James*,
2026 WL 3408217 (S.D.N.Y. Nov. 10, 2026) ....................6

*Murphy v. NCAA*,
584 U.S. 453 (2018) ....................1

*Nessel v. KalshiEX LLC*,
No. 26-cv-731 (W.D. Mich. Apr. 15, 2026) ....................2

*Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*,
2026 WL 579376 (D. Nev. Mar. 2, 2026) .................... *passim*

*Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX LLC*,
No. 26-cv-406 (D. Nev. Feb. 20, 2026) ....................2

*Nevada v. Blockratize Inc.*,
No. 26-1343 (9th Cir. May 21, 2026) ....................2, 8

*Pittman v. La. Stadium & Exposition Dist.*,
2023 WL 2583382 (E.D. La. Mar. 21, 2023) ....................4, 7

*Stevens v. St. Tammany Par. Gov.*,
17 F.4th 563 (5th Cir. 2021) ....................8

*Washington v. KalshiEX LLC*,
No. 26-cv-1062 (W.D. Wash. Apr. 27, 2026)....................2

*Watson v. Philip Morris Cos., Inc.*,
551 U.S. 142 (2007)....................9, 10, 11

*Winters v. Diamond Shamrock Chem. Co.*,
149 F.3d 387 (5th Cir. 1998)....................3, 7, 8, 11

**Statutes**

7 U.S.C. § 7(d)....................5, 11

15 U.S.C. § 3001....................5

28 U.S.C. § 1331....................2, 6, 7, 12

28 U.S.C. § 1441....................3, 6, 7

28 U.S.C. § 1442.................... *passim*

28 U.S.C. § 1446....................8

28 U.S.C. § 1447....................3, 4, 7, 14

La. R.S. 14:90.3....................13

La. R.S. 27....................13

La. R.S. 27:602....................13

## INTRODUCTION

Polymarket's notice of removal, ECF 1, is an egregious abuse of the federal judicial system. This Court should immediately stop it by remanding the case to the Twenty-First Judicial District Court for the Parish of Tangipahoa.

Polymarket, like Kalshi and the other Defendants, is engaged in illegal online gambling operations nationwide in open violation of various states' laws. As a result, state after state—of every political stripe—has stepped forward to hold these actors accountable. This is unsurprising. Since time immemorial, the several states have independently regulated gambling—some "ban[] the practice" entirely, while others allow it subject to specific restrictions. *KalshiEX, LLC v. Assad*, 190 F.4th 1098, 1120 (9th Cir. 2026). Indeed, the Supreme Court has reaffirmed time and again "that 'each State is free to act' in this area" absent congressional action. *Id.* at 1119 (quoting *Murphy v. NCAA*, 584 U.S. 453, 486 (2018)).

So Louisiana did. It sued Defendants in Louisiana state court on November 12 for blatant violations of Louisiana's gambling laws. The state court immediately saw Defendants' illegal operations for what they are and issued a temporary restraining order; the court also set a preliminary-injunction hearing for November 30. Desperate to revive its illegal conduct (and skip the November 30 hearing), Polymarket filed the pending notice of removal just before midnight on November 13. Its avowed aim is to scuttle state-court proceedings and void the preliminary relief ordered by the state court. *See* ECF 1-4 (warning the state court that it "may proceed no further unless and until the action is remanded"); ECF 4 (demanding dissolution of the temporary restraining order).

Polymarket argues that removal is proper under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1) (because Polymarket purportedly is acting under a federal officer), and the

federal-question statute, 28 U.S.C. § 1331 (because this suit purportedly arises under federal law). Polymarket pretends as if these arguments arrive at the Court on a clean slate. They do not.

Take first Polymarket's claim that it is acting under a federal officer and thus is entitled to remove under § 1442(a)(1). Not even Kalshi believes that—in fact, Kalshi is complaining across the country that there is *no* removal jurisdiction under § 1442(a)(1) in these cases because plaintiffs have not joined the Commodity Futures Trading Commission (CFTC). *See, e.g.*, Opp. to Pls.' Mot. to Remand 22, *Nessel v. KalshiEX LLC*, No. 26-cv-731 (W.D. Mich. Apr. 15, 2026), ECF 8; Opp. to Pls.' Mot. to Remand 21, *Washington v. KalshiEX LLC*, No. 26-cv-1062 (W.D. Wash. Apr. 27, 2026), ECF 21; Mem. of Law in Resp. to Pls.' Mot. to Remand 20, *Nevada ex rel. Nevada Gaming Control Bd. v. KalshiEX LLC*, No. 26-cv-406 (D. Nev. Feb. 20, 2026). Nonetheless, Defendant Polymarket has dared to take the frivolous step Kalshi has avoided: arguing that there *is* removal jurisdiction under § 1442(a)(1) because Polymarket is supposedly acting under a federal officer—and Polymarket has lost that argument before every judge to consider it. *See Nevada ex rel. Nevada Gaming Control Bd. v. Blockratize Inc.*, 2026 WL 579376, at *4 (D. Nev. Mar. 2, 2026) ("[T]he Court finds that Polymarket is unable to avail itself of the federal officer removal statute."); Order 2, *Nevada v. Blockratize Inc.*, No. 26-1343 (9th Cir. May 21, 2026), ECF 15.1 (Ninth Circuit *Nevada* Order) ("Polymarket's argument that it was acting under the direction of a federal officer at the Commodity Futures Trading Commission similarly fails."); Report and Recommendation 5, *Commonwealth of Kentucky v. QCX LLC*, No. 26-cv-47 (E.D. Ky. Oct. 14, 2026), ECF 41 (*Kentucky* R&R) ("Polymarket is not a person acting under a federal officer that authorizes removal under 28 U.S.C. § 1442(a)(1)."). The Court need only cite these decisions to summarily order remand here, too.

The same is true of Polymarket's frivolous claim that there is federal-question jurisdiction over Louisiana's suit. As the District of Nevada, the Ninth Circuit, and the Eastern District of Kentucky magistrate judge emphasized, claims like Louisiana's "do not necessarily raise an issue of federal law" and thus this Court "lacks 'arising under' jurisdiction." *Nevada ex rel. Nevada Gaming Control Bd.*, 2026 WL 579376, at *5; *Kentucky* R&R 12 ("Because no federal issue has [] been raised, removal under 28 U.S.C. § 1441(a) is improper."); *accord* Ninth Circuit *Nevada* Order 2 ("Polymarket has not shown it is likely to succeed on the merits of this argument.").

Polymarket's unanimous losses illustrate that it loses on the merits here, but binding Fifth Circuit precedent also holds that Polymarket is collaterally estopped from attempting to relitigate its District of Nevada loss here (and thus, Polymarket's entire removal action is foreclosed). *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 395 (5th Cir. 1998) (reaffirming that it is "appropriate" to apply offensive collateral estoppel "to a jurisdictional decision—such as one granting a motion to remand—that is [] capable of being subjected to appellate review").[1] In ordering remand, therefore, the Court should hold *both* that Polymarket's removal arguments are collaterally estopped *and* that they fail on the merits. That confirmed record of abusive litigation will be helpful to the Fifth Circuit whenever Polymarket inevitably appeals (*see* 28 U.S.C. § 1447(d)) in desperate pursuit of delay at all costs.

Louisiana respectfully requests that the Court summarily order remand as quickly as possible for three reasons. *First*, every day that passes rewards Polymarket's gamesmanship, including by thwarting ongoing state-court proceedings when there is no legitimate basis for doing

[1] In fact, although the Court need not go this far, the Fifth Circuit also has understood itself "restrain[ed]" by Supreme Court precedent to hold that collateral estoppel would equally apply even without the availability of appellate review. *See Winters*, 149 F.3d at 396 & n.11. Louisiana does not need that theory to prevail here, but it preserves that argument all the same, which reinforces that Polymarket cannot overcome its collateral estoppel problem.

so. *Second*, Polymarket has simply copied and pasted arguments it has raised elsewhere, and so it needs no more than a day to prepare and file its response to this motion. *Third*, other Defendants are attempting to use this improper removal as a vehicle to alter the status quo in state court, even though this Court lacks jurisdiction. *See* ECFs 4, 8. Here, as always, the Court must first assess its authority to act (or lack thereof). *See, e.g.*, *Pittman v. La. Stadium & Exposition Dist.*, 2023 WL 2583382, at *4 n.66 (E.D. La. Mar. 21, 2023) ("The removal statute is clear that the Court must remand the case to state court '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" (citing § 1447(c))); *Loeb v. Vergara*, 326 F. Supp. 3d 295, 303 (E.D. La. 2018) (declining to consider other pending motions: "Because a court must have subject matter jurisdiction in order to adjudicate the merits of a claim, the court must first consider plaintiffs' motion to remand."). And because this Court lacks subject matter jurisdiction, the proper route is to first remand this case to state court and then dismiss all other pending motions as moot.

The Court can and should grant remand in a summary order that incorporates by reference the other decisions cited above where Polymarket has lost the exact same arguments. The Court also should order Polymarket to pay Louisiana's "just costs and [] actual expenses, including attorney fees," for what Polymarket knows—based on its string of losses—is a frivolous invocation of this Court's jurisdiction. 28 U.S.C. § 1447(c).

## BACKGROUND

The facts relevant to this motion are brief. Polymarket, like the other Defendants, runs an online platform that facilitates gambling. These platforms generally are known as "designated contract markets" or DCMs. ECF 1-1 (Pet.). Polymarket markets itself as the world's largest prediction market. Pet. ¶ 92. Polymarket entices its users to gamble on virtually every issue imaginable ranging from weather to elections—but mostly sports-related topics. For example, Polymarket permitted Louisianans to bet on the outcome of the recent LSU-Alabama college

football game. *Id.* ¶ 173. Polymarket also permits its users to bet on specific aspects of sports—such as who will be the regular season passing touchdown leader. *Id.* ¶ 179.

To operate as a DCM, Polymarket is statutorily required to follow various rules and regulations enforced by the CFTC. By statute, Congress enumerated various "core principles" that govern every entity that wishes "[t]o be designated, and maintain a designation," as a DCM. 7 U.S.C. § 7(d)(1)(A)(i). DCMs likewise must obey "any requirement" promulgated by the CFTC via "rule or regulation." *Id.* § 7(d)(1)(A)(ii). To take a few examples, those principles and rules require DCMs to safely store trade information, *id.* § 7(d)(10); protect the financial integrity of trade transactions, *id.* § 7(d)(11); forbid abusive practices by markets and market participants, *id.* § 7(d)(12); maintain a disciplinary system, *id.* § 7(d)(13); maintain a dispute resolution system, *id.* § 7(d)(14); regulate conflicts of interest, *id.* § 7(d)(16); avoid antitrust violations, *id.* § 7(d)(19); and so on.

The underlying merits issue in this case—and in numerous cases across the country—is whether Polymarket and other DCMs may openly violate state gambling and consumer protection laws. States like Nevada, Washington, and Michigan rightly believe that the answer is no given states' longstanding and traditional regulatory authority over gaming, and so have sought to enforce their gambling laws accordingly. Indeed, Congress itself has reaffirmed that "the States should have the primary responsibility for determining what form of gambling may legally take place within their borders." 15 U.S.C. § 3001(a)(1).

The states have prevailed almost universally across the country on that merits question, including in the Ninth Circuit, which held that states properly may regulate "contracts related to gaming on prediction markets." *KalshiEX, LLC*, 190 F.4th at 1105. But Polymarket and its co-Defendants disagree: They believe that Congress (via the CFTC) has preempted any state laws in

this space. *Contra id.* (rejecting the DCMs' argument that the CFTC "has exclusive regulatory authority over [] sports event contracts"). And as the Southern District of New York recognized six days ago, a troubling "collusive effort" between the CFTC and the DCMs has come to light, apparently aimed at trying to shield the DCMs from liability in these cases. *Ludlow Exchange, LLC v. James*, 2026 WL 3408217, at *16 (S.D.N.Y. Nov. 10, 2026).

In this case, Louisiana sued Polymarket, Kalshi, and numerous other DCMs who are violating Louisiana gambling laws, as well as Louisiana's unfair and deceptive trade practices laws. Louisiana also requested a temporary restraining order and preliminary injunction against Defendants' illegal gambling operations. Louisiana raises no federal claim, nor does it raise any state-law claim that invokes federal law.

The state trial court entered the requested temporary restraining order on November 12, 2026, and set a preliminary-injunction hearing for November 30. ECF 1-3. Shortly before midnight on Friday, November 13, Polymarket filed a notice of removal, citing two grounds: (1) the federal-officer removal statute, 28 U.S.C. § 1442(a)(1) (because Polymarket purportedly is acting under the CFTC), and (2) the federal-question statute, 28 U.S.C. § 1331 (because Louisiana's suit purportedly arises under federal law). On Saturday, November 14, Defendants Robinhood and Rothera filed motions to dissolve the state court's temporary restraining order. ECFs 4, 8.

## LEGAL STANDARDS

Under 28 U.S.C. § 1441(a), a defendant may remove any civil action over which this Court would "have original jurisdiction." One such example of a case falling within this Court's original jurisdiction is an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Under 28 U.S.C. § 1442(a)(1), a defendant may remove a civil action against "any person acting under [a federal] officer ... for or relating to any act under color of such office." "The

removing party bears the burden of demonstrating that federal jurisdiction exists." *Pittman*, 2023 WL 2583382, at *3.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.* "A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case." *Id.*

## ARGUMENT

### I. This Removal Action Is Improper Because Polymarket Is Collaterally Estopped.

This removal action does not get off the ground because it rests on Polymarket's claims of jurisdiction under § 1442(a)(1) and § 1441(a) (through § 1331)—the same claims Polymarket raised and lost in the District of Nevada. The Fifth Circuit's decision in *Winters* thus forecloses this removal action because Polymarket is collaterally estopped.

In *Winters*, the Fifth Circuit explained that offensive collateral estoppel (otherwise known as issue preclusion) is appropriate where "[f]our conditions" are met: (1) the issue in both actions is identical; (2) the issue was fully litigated in the prior action; (3) the issue necessarily supported the judgment in the prior case; and (4) there are no special circumstances that would render the application of estoppel unfair. 149 F.3d at 391. As to prong (4), the Fifth Circuit expressed doubt that it would be fair to apply offensive collateral estoppel if the order in question could not be appealed. If a "jurisdictional decision" such as an order "granting a motion to remand," the Fifth Circuit explained, "is not capable of being subject to appellate review," then "it would seem appropriate to hold as a matter of law that collateral estoppel may not be applied offensively." *Id.* at 395. But the flipside is true, too: If such an order is appealable, then it fairly receives collateral

estoppel effect. *See id.* ("We thus see that the availability of review is of paramount importance to the issue of preclusion.").

*Winters* ends this removal action. As to prong (1), Polymarket's two (and only two) claims of jurisdiction are the same two (and only two) claims that Polymarket raised and lost in the District of Nevada. *See Nevada ex rel. Nevada Gaming Control Bd.*, 2026 WL 579376, at *2–5. There, as here, Polymarket claims to be acting under the CFTC (*see infra* Section II), and to have a preemption defense that causes this case necessarily to arise under federal law (*see infra* Section III). As to prongs (2) and (3), by definition, both claims were fully litigated there and necessarily supported the Nevada district court's decision to remand that case to state court. Finally, as to prong (4), there are no special circumstances that might alter the collateral-estoppel analysis: By statute, Polymarket was entitled to (and did) immediately appeal that remand order, including all issues within the order. *See* 28 U.S.C. § 1446(d); *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 237 (2021). Indeed, Polymarket already has been rejected by a Ninth Circuit motions panel that recognized the frivolous nature of these arguments. *See* Ninth Circuit *Nevada* Order. Under *Winters*, therefore, the *Nevada* "jurisdictional decision" receives "preclusive effect" and bars Polymarket from raising those arguments here. 149 F.3d at 395; *see Stevens v. St. Tammany Par. Gov.*, 17 F.4th 563, 571 (5th Cir. 2021) ("Generally, 'a judgment is entitled to preclusive effect even though an appeal is pending.'" (citation omitted)).

This is an extraordinarily easy preclusion case. The Court thus should immediately order remand on this basis.

## II. In Any Event, This Court Lacks Jurisdiction.

Although Louisiana wins its remand motion on preclusion, the State respectfully asks that the Court also note that remand is equally warranted on the merits. The reason is that—as illustrated by their conduct in other litigations nationwide—Louisiana expects Polymarket and its

co-Defendants to file a frivolous appeal with the Fifth Circuit solely for purposes of delay. Louisiana thus has a vested interest in illuminating a record of repeated and extensive bad-faith litigation conduct that may inform the Fifth Circuit's decisional process (and also Louisiana's request for just fees and costs).

**A. There Is No Federal-Officer Removal Jurisdiction (§ 1442(a)(1)).**

Start with the federal-officer removal statute. Polymarket has no legitimate basis to invoke the statute. Among other elements that the Court need not consider here, that statute allows certain defendants to remove—namely, those defendants "acting under [a federal] officer." § 1442(a)(1). Polymarket claims to be such a defendant. But the District of Nevada, the Ninth Circuit, and the Kentucky magistrate judge all easily (and rightly) rejected that claim.

The Supreme Court has explained that an "acting under" relationship necessarily bears two features: (1) it "typically involves 'subjection, guidance, or control,'" and (2) it "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151–52 (2007). The Supreme Court also has spoken at length about what an "acting relationship" *is not*. It "does *not* include simply *complying* with the law." *Id.* at 152. In fact, even "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.* at 153. "[T]hat is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* Otherwise, the statute wrongly would "expand" to include "state-court actions filed against private firms in many highly regulated industries." *Id.*

That black-letter law forecloses Polymarket's invocation of the statute here. Polymarket claims to be "a 'person acting under' the CFTC,"[2] ECF 1 at 11—but it comes nowhere close to proving up that claim. For example, Polymarket characterizes itself as "a self-regulatory organization" that has "a broad array of functions, including that it must "'establish, monitor, and enforce compliance with the rules of the contract market,' including 'access requirements,' 'the terms and conditions of any contracts to be traded on the contract market,' and 'rules prohibiting abusive trade practices on the contract market.'" ECF 1 at 13; *see id.* at 13–15 (reproducing the statutory and regulatory rules that govern Polymarket). These are copy-and-paste allegations that the other courts squarely confronted and rejected under *Watson*.

Each of the functions Polymarket "identifie[s] demonstrate compliance," which is insufficient under *Watson*. *Nevada ex rel. Nevada Gaming Control Bd.*, 2026 WL 579376, at *3. "Given the CFTC's ultimate oversight and control over Polymarket, ... Polymarket's delegated function of self-certifying contracts 'fits squarely within the precept of mere compliance within regulatory standards and outside the acting under provision of 1442(a)(1).'" *Id.* (citation modified). So, too, with Polymarket's claim that "it has a self-regulating function of establishing, monitoring and enforcing compliance with the rules of the contract market including access requirements as to third parties." *Id.* (citation modified). "Because Polymarket is 'duty-bound to follow' CFTC's requirements, Polymarket's delegated functions fall within the 'simple compliance with the law'

[2] An independent basis for rejecting Polymarket's "acting under" argument is the fact that Polymarket tries to get away with alleging that it is acting under *an agency*. The statute does not allow that move. It specifically distinguishes between "any agency" and "any officer," and refers to a defendant acting only "under [an] officer." 28 U.S.C. § 1442(a)(1). Polymarket thus would have to identify a specific officer who purportedly is directing and controlling Polymarket's conduct in the way that *Watson* requires. Polymarket does not even try to do so, presumably because no such officer exists—and Polymarket cannot avoid that fact by hiding behind an assertion that it is acting "under the CFTC."

circumstance[.]" *Id.*; *accord Kentucky* R&R 4 ("Requiring a contract market, like Polymarket, to police *its own* operations is not the transfer of a federal officer's duties.").

To those findings, Louisiana adds two brief points that merit attention. *First*, Polymarket claims that it and the CFTC have "an unusually close [relationship] involving detailed regulation, monitoring, or supervision"—as if that alleged fact is material. ECF 1 at 11 (quoting *Watson*, 551 U.S. at 153). That is misleading. For one thing, *Watson* itself specifically says that "a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone"—"even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." 551 U.S. at 153. That is, at best, all Polymarket claims here, which is insufficient under *Watson*. For another thing, Polymarket plucks that "unusually close" *Watson* quote from a passage where the Supreme Court was talking about *a private contractor*, *id.* at 153–54, such as the contractor in *Winters* who produced Agent Orange for the government subject to detailed specifications and on pain of criminal penalties. Polymarket is nothing of the sort.

*Second*, Polymarket claims that it is performing "tasks the federal government would otherwise perform." ECF 1 at 12. That is incorrect. If Polymarket ceased to comply with the rules governing DCMs, Polymarket could not legally exist and thus there would be no need for rules to govern Polymarket. *See* 7 U.S.C. § 7(d)(1)(A)(i) (identifying the various rules with which a DCM must comply to "maintain [its] designation"); *see also Kentucky* R&R 5 ("[T]here is no evidence presented that the CFTC would start operating Polymarket's exchange should Polymarket fail to do so."). Nobody—not the CFTC, not anyone else—needs Polymarket's gambling operation.

All this means "Polymarket fails to satisfy the 'acting under' prong necessary to invoke the federal removal statute"—and thus Polymarket (again) cannot claim jurisdiction on this basis. *Nevada ex rel. Nevada Gaming Control Bd.*, 2026 WL 579376, at *3; *accord id.* at *4 ("In sum,

the Court finds Polymarket is not 'acting under' the CFTC by self-certifying contracts, nor by regulating access to its market. Accordingly, the Court finds that Polymarket is unable to avail itself of the federal officer removal statute."). Or, as the Ninth Circuit put it, "Polymarket's actions merely demonstrate its own compliance with federal law, which cannot alone show that it is acting under a federal officer." Ninth Circuit *Nevada* Order 2; *accord Kentucky* R&R 5 ("[T]his Court finds that Polymarket is not a person acting under a federal officer that authorizes removal under 28 U.S.C. § 1442(a)(1).").

### B. There Is No Federal-Question Jurisdiction (§ 1331).

Polymarket's invocation of the federal-question statute is equally meritless, as the District of Nevada, the Ninth Circuit, and the Kentucky magistrate judge all recognized. As to each of Louisiana's state-law claims, Polymarket asserts that they "require the adjudication of federal-law issues that are '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" ECF 1 at 20 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Virtually every page of Polymarket's discussion involves the same repeated claims: that "the CFTC—not Plaintiff"—has the authority to regulate the gambling at issue in this case, and that Louisiana's claims cannot be decided without reference to federal law. *Id.* at 21; *see id.* at 27 ("[E]ach of Plaintiff's claims turn on whether Polymarket US's event contracts are prohibited wagers or valid derivatives transactions under the [Commodity Exchange Act], and the scope of the CFTC's exclusive jurisdiction in making that determination.").

Those claims are futile and an exercise in misdirection. For one thing, insofar as they lean into the CFTC's supposed preemptive role, that is an *affirmative defense* which cannot be the basis for removal under the well-pleaded complaint rule. *See Nevada ex rel. Nevada Gaming Control Bd.*, 2026 WL 579376, at *5 ("The Court agrees with the Board that this is essentially a preemption

argument raised as a defense.”); Ninth Circuit *Nevada* Order 2 (Polymarket’s preemption argument “is an affirmative defense, which cannot by itself give rise to federal question jurisdiction”); *Kentucky* R&R 12 (“[T]his preemption argument cannot justify removal.”). For another thing, Polymarket never acknowledges the core provision of Louisiana law that Polymarket is alleged to have violated—the prohibition on “[s]ports wagering” except when (unlike here) done “in compliance” with clear restrictions under Louisiana law. La. R.S. 14:90.3(P) (cited at Pet. ¶¶ 65, 105); *see* Pet. ¶ 99 (alleging that “sports represent[ed] 98.2%” of Polymarket’s business during one 30-day period). Polymarket does not confront Louisiana’s extensive allegations regarding Polymarket’s ongoing violations of the sports-wagering prohibition. *See* Pet. ¶ 101 (“Polymarket is not licensed as a sports wagering licensee in Louisiana, is not permitted as a sports wagering platform provider in Louisiana ....”); Pet. at 43–53 (extensive allegations under the heading “Defendants’ Sporting ‘Event Contracts’ Constitute Sports Wagering Under Louisiana Law”). And Polymarket does not confront the La. R.S. 27 provisions governing illegal sports wagers, including the definition of “sports wager,” which quite literally has nothing to do with federal law. La. R.S. 27:602–05 (cited at Pet. ¶¶ 6, 66, 67, 68, 69, 70, 71, 72, 103, 167, 171, 180, 181, 187, 213, 219); *see* La. R.S. 27:602(23) (“‘Sports wager’ or ‘sports bet’ means a sum of money or representation of value risked by a player on an occurrence associated with a sports event for which the outcome is uncertain. The term includes but is not limited to single-game bets, teaser bets, parlay bets, over-under bets, moneyline bets, pools, exchange wagering, in-game wagering, in-play bets, proposition bets, and straight bets.”).

The Court thus should not take seriously Polymarket’s feigned ignorance about how this case could be resolved only with reference to Louisiana law. Each Count in the Petition is specifically tied to Polymarket’s illegal “sports wagering” conduct, Pet. ¶¶ 213 (Count I citing La.

R.S. 27), 219–27 (Count II), 235–36 (Count III), 243–45 (Count IV)—conduct that is specifically defined in Louisiana law solely with respect to Louisiana law. That is especially so with respect to Louisiana's unfair trade practice claims, which are quintessential state-law claims having zero to do with federal law. Put in terms of the governing "arising under" standard, Polymarket does not come close to identifying any federal question that is necessarily raised, actually disputed, or substantial in Louisiana's Petition. *Contra* ECF 1 at 20.

Recognizing as much, Polymarket mischaracterizes Louisiana's Petition as itself "draw[ing] on federal law" to make out its claims. ECF 1 at 25 (citation omitted). That is incorrect. The Petition footnotes that Polymarket cites expressly respond to Polymarket's anticipated preemption defense; indeed, the Petition outright says this. *See* Pet. ¶ 186 ("Federal appellate courts have also rejected Defendants' federal-preemption defenses, holding these sports 'event contracts' are not 'swaps' subject to the CFTC's exclusive jurisdiction."). That is especially clear since Louisiana's statutory definition of "sports wager" does not turn at all on whatever federal law does or does not say. The Court thus should dismiss out of hand Polymarket's attempt to transform its affirmative preemption defense into part of Louisiana's causes of action. It is not. And just as in every other case where Polymarket has lost this argument, there is no federal-question jurisdiction in this case.

## III. The Court Should Award Louisiana Just Fees and Costs.

Because Polymarket's removal arguments are frivolous—and because multiple courts already have told Polymarket as much—the only plausible understanding of Polymarket's removal in this case is that it is an avowed attempt to create delay and impose litigation costs on Louisiana. The Court should not tolerate that gamesmanship. Section 1447(c)'s provision for just fees and costs exists precisely for this scenario. "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and

imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Am. Airlines v. Sabre, Inc.*, 694 F.3d 539, 542 (5th Cir. 2012) (citation and alteration omitted).

That test is satisfied here. Polymarket knows it does not satisfy the removal criteria because it has lost these arguments repeatedly over the past year. At some point, the federal courts must say that enough is enough. This is the case in which to do that. Accordingly, Louisiana respectfully asks that the Court order just fees and costs when remanding this case.

## CONCLUSION

The Court should grant Louisiana's emergency motion to remand and immediately send this case back to the Twenty-First Judicial District Court. It should also award just fees and costs to Louisiana.

Dated: November 16, 2026

Respectfully submitted,

Elizabeth B. Murrill
Attorney General of Louisiana

*/s/ Caitlin Huettemann*
Caitlin Huettemann (La #40402)*
*Assistant Solicitor General*
Elizabeth Brown (La #42025)*
*Assistant Solicitor General*

*/s/ Ryan M. Nolan*
Michael Dupree (La #26870)
*Director, Public Protection Division*
John J. Kelley (La #35506)
*Section Chief, Public Protection Division*
Ryan M. Nolan (La #37244)
*Assistant Attorney General, Complex Litigation, Public Protection Division*

Dawn M. Himel (La #31007)
*Director, Gaming Division*
Jeremy Gathe (La #34557)
*Section Chief, Gaming Division*
Sarah Trouard (La #30313)
*Assistant Attorney General, Gaming Division*

Office of the Louisiana Attorney General
1885 North Third Street
Baton Rouge, LA 70802
Telephone: (225) 326-6300
huettemannc@ag.louisiana.gov
browne@ag.louisiana.gov
dupreem@ag.louisiana.gov
kelleyj@ag.louisiana.gov
nolanry@ag.louisiana.gov
himeld@ag.louisiana.gov
gathej@ag.louisiana.gov
trouards@ag.louisiana.gov

**motion to enroll pending*

*Counsel for the State of Louisiana*